******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

*Syllabus*

The petitioner, who had been convicted, on a guilty plea, of robbery in the
first degree as a persistent dangerous felony offender, sought a writ of
habeas corpus, claiming that the trial court deprived him of his right
to due process in his criminal case by, inter alia, refusing to let him
represent himself or to allow his appointed trial counsel, D, to withdraw,
and that D provided ineffective assistance. The habeas court rendered
judgment denying the habeas petition and, thereafter, denied the petition
for certification to appeal, and the petitioner appealed to this court. He
claimed, inter alia, that the habeas court, in denying his petition for
certification to appeal, erroneously determined that, by virtue of his
unconditional guilty plea, he had waived his pretrial claims of ineffective
assistance of counsel and structural error related to his right of self-
representation. *Held:*

1. The habeas court did not abuse its discretion in denying the petition for
certification to appeal with respect to the petitioner's claims that the
habeas court improperly refused to permit him to represent himself, to
permit D to withdraw as counsel, to provide him with an investigator
and to recuse itself: because an unconditional guilty plea deprives a
petitioner of the ability to collaterally challenge his conviction when
the claims are based on nonjurisdictional defects that are unrelated to
the voluntariness of the plea, the petitioner was unable to demonstrate
that he did not implicitly waive the claims at issue by virtue of his
unconditional guilty plea, and the petitioner's reliance on *Hill* v. *Lockhart*
(474 U.S. 52) for the proposition that it prohibits the application of the
waiver rule to claims of ineffective assistance of counsel following an
unconditional guilty plea was unavailing, as *Hill* was not inconsistent
with the application of the waiver rule, nor did it undermine the rule's
application in the present case in which the specific claims of ineffec-
tiveness were unrelated to the validity of the unconditional guilty plea;
moreover, there was no relevant authority that directly supported the
petitioner's argument that his claims related to self-representation and
the court's refusal to remove D as trial counsel were not subject to the
waiver rule, as the petitioner could not demonstrate that any of the
rulings at issue affected his decision to plead guilty, and the habeas
court found that despite D's contested representation of the petitioner,
the decision to accept the state's plea offer and to plead guilty was
made solely by the petitioner.

2. The petitioner could not prevail on his claim that his guilty plea was not
knowing, intelligent and voluntary because D failed to remove himself
as counsel and that had D rendered effective representation or the court
permitted the petitioner to represent himself, he would have not pleaded
guilty and would have insisted on exercising his right to a trial; although
the petitioner purported to challenge the validity of his plea, his claim
on appeal was an attempt to litigate pretrial claims of ineffective repre-
sentation and rulings with respect to self-representation, and because,
if any ineffective assistance occurred, it was antecedent to the plea
hearing and known by the petitioner, it was effectively waived by the plea
of the petitioner, who failed to show that any of the alleged deficiencies
in D's representation rendered his subsequent guilty plea invalid and
to undermine the habeas court's determination that he had not been
compelled to plead guilty and that his decision to plead guilty was made
knowingly and voluntarily.

Argued January 18—officially released May 8, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of

Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Heather Clark*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Mark Henderson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion by denying his petition for certification to appeal on the ground that it was untimely[1] and, in the alternative, on its merits. With respect to the petitioner's claim that the habeas court abused its discretion in its consideration of the merits of the petition, he claims that the court erroneously determined that, by virtue of his unconditional guilty plea, he waived his pretrial claims of ineffective assistance of counsel and claims of structural error related to his right of self-representation. The petitioner also claims that, absent counsel's ineffectiveness and the court's denial of his right to self-representation, he would not have pleaded guilty and would have insisted on exercising his right to a trial. We conclude that the court properly exercised its discretion in denying the petition for certification to appeal and, accordingly, we dismiss the appeal.

The following procedural history underlies the present appeal. In 2011, following the court's acceptance of the petitioner's guilty plea, the petitioner was convicted of robbery in the first degree as a persistent dangerous felony offender in violation of General Statutes §§ 53a-134 (a) (2) and 53a-40 (a) (1) (A) (B) (iv). The court sentenced the petitioner to serve a twenty-year term of incarceration. The petitioner did not file a direct appeal.

In 2013, the petitioner, acting in a self-represented capacity, brought a petition for a writ of habeas corpus. On September 4, 2015, the petitioner, still acting in a self-represented capacity, brought the seven count amended petition that the habeas court denied. The habeas court reasonably interpreted the fifty-eight page amended petition to allege that two of the trial judges who made rulings in his criminal case (*Keegan, J.* and *Iannotti, J.*) deprived the petitioner of his right to due process by (1) refusing to permit him to represent himself; (2) refusing to permit appointed defense counsel, John Drapp, to withdraw his appearance in the case; (3) refusing the petitioner's request to be provided with the services of an investigator at the state's expense; and (4) refusing to recuse themselves from the case. Additionally, the court interpreted the amended petition to allege that Drapp had rendered ineffective assistance by virtue of his (1) declining to prepare and present a defense based on the doctrine of necessity, (2) failing to interview certain witnesses, (3) failing to remove himself as defense counsel, (4) failing to advise him of the sentencing consequences of being convicted as a persistent dangerous felony offender, and (5) failing to advise him with respect to his right to appeal.

In his return, the respondent, the Commissioner of Correction, contested the allegations of ineffective assistance of counsel. With respect to the petitioner's claims of structural error in counts one and two of the amended petition (alleging errors by the court during the pretrial period), the respondent alleged in the alternative that the petitioner had failed to state a claim on which relief could be granted and that the claims were procedurally defaulted because the claims were not raised by the petitioner prior to the habeas proceeding and the petitioner could not demonstrate cause and prejudice to excuse such default. In his reply, the petitioner contested the allegation of procedural default, but did not deny that he had failed to raise the claims at issue by way of a direct appeal or set forth any cause for such failure.

The habeas court conducted a trial, during which the petitioner represented himself. On June 30, 2016, the habeas court rendered judgment denying the petition. The habeas court's memorandum of decision provides in relevant part as follows: "The petitioner was arrested for the armed robbery of a bank. He readily admits robbing the bank. He also acknowledges a lengthy criminal history, including previous bank robberies, which qualified him for treatment as a persistent dangerous felony offender. Attorney David Egan . . . was appointed to represent the petitioner [at his criminal trial]. On June 14, 2011, the petitioner requested that Attorney Egan be removed as counsel and that he be permitted to handle his own defense. At Attorney Egan's request, the court appointed Paul Carty to represent the petitioner on September 7, 2011.

"The petitioner continued his quest to represent himself and moved for Judge Arnold to recuse himself. Attorney Carty urged the court to order a competency examination and, pursuant to General Statutes § 54-56d, Judge Arnold granted that request.

"On November 29, 2011, the requisite competency proceeding was held, and Judge Arnold determined that the petitioner was able to understand the nature of the charges against him, the proceedings in which he was involved, and to assist counsel in his own defense. Also, on that date, the petitioner demanded that Attorney Carty withdraw as his attorney. Judge Arnold denied that request and denied a recusal motion.

"On January 12, 2012, the court granted the petitioner's request to appear for himself and, eventually, Attorney Drapp became standby counsel. The petitioner asked for the assistance of an investigator, and Attorney Drapp engaged his customary investigator to help the petitioner. However, the petitioner refused to work with that investigator.

"The petitioner, on April 30, 2012, requested new standby counsel based on a perceived conflict of inter-

est with Attorney Drapp. Judge Keegan discerned no genuine conflict of interest, and denied the motion. Jury selection was scheduled to begin on June 19, 2012. The Office of the Chief Public Defender allowed special public defender Drapp to retain a different investigator.

"On June 7, 2012, Judge Keegan ruled that the petitioner [had] forfeited his right to represent himself based on his persistent misbehavior in the courtroom. Attorney Drapp was then tasked with representing the petitioner in full. Judge Keegan filed a written memorandum [of decision] on June 21, 2012, articulating her decision to revoke the petitioner's opportunity to represent himself.

"In response, the petitioner moved for [for Attorney Drapp to be removed as counsel] and [for] Judge Keegan's recusal. Attorney Drapp also moved to withdraw as counsel. These motions were denied, but the imminent jury trial was postponed.

"Frustrated by these decisions, the petitioner engaged in a hunger strike. In the interim, Attorney Drapp thoroughly familiarized himself with the evidence in the case. Attorney Drapp suggested an emotional distress type of defense, but the petitioner strongly disagreed with that strategy. Instead, he insisted that Attorney Drapp pursue the common-law defense of necessity based on the petitioner's claim that he had to rob a bank to obtain sufficient funds to relocate [the residence of] his mother. He perceived that his past activities as a government informant placed his and her life in danger should the targets of his assistance seek vengeance.

"Attorney Drapp tried, in vain, to convince the petitioner that this doctrine was not a legitimate defense to the armed robbery [that] he conceded he [had] perpetrated. The petitioner obstinately refused to recognize this reality."

After the court set forth legal principles related to the common-law defense of necessity and duress, it concluded that such defenses were not available to the petitioner. The court stated: "[N]o one demanded that the petitioner rob a bank under threat of an imminent use of force against him or his mother. The lack of financial wherewithal to extricate oneself from a vague and generalized fear of possible harm in the unspecified future simply provides no excuse to commit bank robbery under our system of criminal justice. As ardently as the petitioner may wish it were otherwise, Attorney Drapp's refusal to pursue such a fanciful defense was ethically and professionally mandated.

"The petitioner's criminal trial was rescheduled to begin on April 30, 2013. A second competency examination was ordered, and the hearing resulting from that examination took place on April 12, 2013. Judge Iannotti found [that] the petitioner [was] competent to stand

trial.

"On April 29, 2013, the petitioner agreed to plead guilty to robbery in the first degree as a persistent dangerous felony offender in exchange for the prosecutor's nolle of other charges and a recommended ceiling of twenty-five years to serve and a floor of the mandatory minimum ten year sentence. On July 16, 2013, Judge Iannotti imposed the twenty year term noted above."

The court proceeded in its analysis to conclude that "[t]he petitioner's claims that pertain to alleged improprieties by the judicial officers or Attorney Drapp that are unrelated to the validity of his guilty plea on April 29, 2013, were forfeited by virtue of that plea of guilty." The court engaged in a significant legal analysis of the waiver issue, observing that "[t]he general rule is that a guilty plea waives all nonjurisdictional defects antecedent to the entering of the plea, including defects asserting constitutional deprivations . . . . Only defects which implicate the subject matter jurisdiction of the court survive a later valid guilty plea, and defects asserting a lack of personal jurisdiction over an accused are waived by a subsequent guilty plea. . . . This waiver rule applies equally to matters raised by way of direct appeal or by collateral attack, such as through a petition for habeas corpus relief . . . . A claim of ineffectiveness of counsel at an antecedent proceeding is the kind of defect ordinarily waived by a later guilty plea." (Citations omitted.) The court observed as a general rule that, subject to the limited exception codified in General Statutes § 54-94a, "a later guilty plea washes away nonjurisdictional, pre-plea errors . . . ."

The court went on to conclude: "Consequently, any alleged judicial errors regarding self-representation, recusal, access to investigators, and removal of appointed counsel were waived by the entry of the petitioner's guilty plea on April 29, 2013. Similarly, any claims of ineffective assistance of Attorney Drapp concerning lack of preparation, refusal to interview certain witnesses or to obtain certain documents, conflicts of interest, and the refusal to pursue a necessity defense were also forfeited by that plea.

"Therefore, the only remaining ineffectiveness claims upon which habeas corpus relief can be based center on Attorney Drapp's advice and representation surrounding the petitioner's guilty plea. The petitioner has never alleged that Attorney Drapp failed to apprise him of the elements of robbery in the first degree and being a persistent dangerous felony offender. Nor has he averred that Attorney Drapp misinformed him as to the trial rights he gave up by pleading guilty nor as to the terms of the plea agreement. Also, a factual basis for the crime and status was conceded and obvious.

"The petitioner also makes no claim that Judge Iannotti's plea canvass [was legally deficient] . . . . Nor

does he contend that he was misinformed as to the maximum and mandatory minimum imposable sentence by the judge or Attorney Drapp. Except for adverse immigration consequences, a trial court need not inform a criminal defendant of all possible ramifications which may flow from a plea of guilty . . . .

"The particular deficiencies that the petitioner does assert are that his hunger strikes so affected his thought processes that he was unable to intelligently, knowingly, and voluntarily decide to plead guilty and forgo a jury trial. He further avers that this debilitation caused him to succumb to the coercion exercised by Attorney Drapp. The court finds this allegation unproven.

"As mentioned earlier, the court ordered a second competency evaluation of the petitioner shortly before he entered his guilty plea. On April 12, 2013, Dr. Joseph Chien, a fellow in psychiatry at Yale University, testified that the petitioner understood the nature and attendant sentence for each crime of which he was accused; [that he] accurately recounted the roles of the various courtroom participants; and that he had a comprehensive knowledge of the legal proceedings in which he was enmeshed. Dr. Chien further opined that the petitioner was able to discuss possible plea dispositions rationally and even expressed a willingness to plead guilty in exchange for a ten year prison sentence. Dr. Chien also felt, however, that the petitioner's deep distrust of attorneys, including Attorney Drapp, disabled him from meaningfully assisting counsel. The doctor acknowledged that the question of the petitioner's capacity to work with an attorney was a 'close call.' After the hearing, Judge Iannotti ruled that the petitioner was legally competent to stand trial.

"Dr. Chien had reviewed the petitioner's medical records kept by the Department of Correction which review encompassed the periods of hunger strike. The doctor related that, during these events, the petitioner continued to drink water and protein drinks and had only lost twenty pounds over his four month abstinence.

"Attorney Drapp testified at the habeas hearing. He recalled that the petitioner, if convicted after trial, faced a maximum, effective sentence equivalent to life imprisonment. The petitioner concurred that he was aware of this exposure. Attorney Drapp stated that he strongly recommended that the petitioner accept the state's offer, however, he never coerced or badgered the petitioner into changing his plea. The court finds Attorney Drapp's testimony credible on this point.

"Dr. James Elderkin, a specialist in internal medicine at a facility that treats inmates at the University of Connecticut Health Center, monitored the petitioner's medical condition during the two hunger strikes and for some time after his guilty plea proceeding. In his assessment, the petitioner's hunger strike created no

medical condition that had impinged on his ability to participate in that proceeding. He observed that the petitioner exhibited no altered mental state impairing his comprehension skills. Had he seen evidence of such impairment, Dr. Elderkin would have intervened by prohibiting the petitioner's trip to court.

"Neither party introduced a transcript of the guilty plea hearing of April 29, 2013. However, Judge Iannotti rendered findings that were recorded as docket entries by the clerk. Judge Iannotti decided that the petitioner's guilty pleas 'were . . . given freely and knowingly with [the] advice of counsel.' In the absence of credible evidence to the contrary, this court determines that the petitioner's restrictive diet did not diminish his ability to comprehend the terms of the plea agreement; the trial rights that he was yielding by pleading guilty; the elements and maximum and minimum mandatory sentences of robbery [in the] first degree as a persistent dangerous felony offender; and the advice [that] Attorney Drapp gave him. The petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that his guilty plea was unknowing, involuntary, or the subject of coercion by Attorney Drapp.

"[The petitioner's] assertion that he was 'forced' to plead guilty appears to be a metaphorical use of that word rather than a literal or legal one. Unquestionably, the petitioner faced unenviable circumstances and limited options. The evidence against him overwhelmingly and undisputedly demonstrated that he robbed bank employees in excess of $3000 while armed with an operable firearm. His terrible and lengthy history of criminal convictions and prison sentences made the prospect of spending the remainder of his life behind bars quite likely if convicted, once again, for bank robbery. The pressure to accept the state's very reasonable proposal created by the weight of the above realities did not invalidate the guilty plea or render Attorney Drapp's advice to do so deficient.

"The petitioner also argues that his hearing impairment ought to justify [the] overturning of his conviction. The court also rejects this contention. A review of the transcripts of the petitioner's many court appearances belies this claim. He exhibited little difficulty understanding the dialogue as it occurred. The doctors that interacted with him never found his diminished hearing to be so manifest as to require extended comment. Attorney Drapp observed no impediments in the petitioner's ability to understand and respond to oral communications. Although the petitioner complained that his hearing aid malfunctioned occasionally at the habeas hearing, the court discerned no instances in which the petitioner's hearing deficit significantly impeded his ability to comprehend what was being discussed in court. The court is very confident that the petitioner's hearing problem played no role in his volun-

tary and knowing decision to plead guilty.

"The final issue the court must address concerns the petitioner's claim that Attorney Drapp never disclosed to him that he could appeal from the conviction that resulted from his guilty plea. However, unless the petitioner expressly inquired about taking an appeal or unless Attorney Drapp had reason to believe that a rational defendant in the petitioner's situation would want to appeal, Attorney Drapp had no 'constitutionally-imposed duty to consult with the [petitioner] about an appeal' . . . . Neither predicate circumstance existed in the present case. Therefore, the petitioner cannot prevail as to this specification of ineffective assistance." (Citation omitted.)

On July 12, 2016, twelve days following the court's decision denying the petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal; see General Statutes § 52-470 (g); and an application for waiver of fees, costs, and expenses and appointment of counsel on appeal (fee waiver application). See General Statutes § 52-259b. In his petition for certification to appeal, the petitioner stated that the grounds for his request for certification were set forth in his fee waiver application. In the fee waiver application, the petitioner stated the following ground for his appeal: "[W]hether the habeas court abused its discretion by failing to address ten questions of law which [the] petitioner distinctly raised and supported by evidence within [the] petitioner's pretrial brief filed on May 23, 2016. And again raised during and before [the] petitioner's closing argument at his June 6-8 habeas trial."

On July 19, 2016, the court denied the petition for certification to appeal. On the court's order, it noted: "Not filed within time period and denied even if it was." With respect to the fee waiver application, on July 19, 2016, the court found the petitioner to be indigent and granted the application to the extent that it waived all appellate fees and costs and ordered the state to pay all necessary expenses. The court, noting the petitioner's self-represented status, denied the petitioner's request for appellate counsel.

On August 4, 2016, the petitioner filed a motion for reconsideration of the denial of his petition for certification to appeal. In that motion, the petitioner challenged only the court's determination that the petition had been untimely filed. On August 8, 2016, the court denied the motion for reconsideration.

On August 4, 2016, the petitioner filed a motion for appointment of appellate counsel. In that motion, the petitioner referred to the fact that he intended to appeal from the court's denial of certification to appeal and that, in its ruling of July 19, 2016, on his original fee waiver application, the court found him to be indigent.

In addition to his motion for appellate counsel, the petitioner included an affidavit in which he set forth numerous grounds that he intended to raise on appeal. These grounds included (1) whether the habeas court abused its discretion in denying the petition for certification to appeal "to address ten questions of law distinctly raised and supported by evidence within [the] petitioner's pretrial brief . . . and raised during [and] before [the] petitioner's closing argument at his . . . habeas trial"; (2) whether Judge Keegan committed "pretrial structural errors"; (3) whether Judge Iannotti committed "cumulative pretrial structural errors"; (4) whether Drapp rendered ineffective assistance; (5) whether he could "establish cause of any procedural default and prejudice, sufficient to excuse the default and permit review of the claim for the first time in this habeas proceeding"; (6) whether "the trial court . . . [stripped him] of his right of self-representation"; (7) whether Judge Iannotti erroneously failed to inquire into his mental state during the pretrial proceedings; (8) whether the habeas court violated his rights to due process and access to the court by its "refusal to issue a subpoena application"; (9) whether the habeas court erroneously failed to admit forty-two exhibits; and (10) whether the habeas court erroneously evaluated the issues before it by "solely focusing on [the] petitioner's choice of defense theory." On August 8, 2016, the court granted the motion for appellate counsel. This appeal followed.

Before discussing the merits of the claims raised on appeal, we must consider whether the petitioner raised the claims in his petition for certification to appeal and, thus, properly preserved them for appellate review. "[A]n appeal following the denial of a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus is not the appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous. Thus, we review whether the issues for which certification to appeal was sought are debatable among jurists of reason, a court could resolve the issues differently or the issues are adequate to deserve encouragement to proceed further. . . . *Because it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal. . . .*

"This court has determined that a petitioner cannot demonstrate that the habeas court abused its discretion in denying a petition for certification to appeal if the issues that the petitioner later raises on appeal were never presented to, or decided by, the habeas court. . . . Under such circumstances, a review of the petitioner's claims would amount to an ambuscade of the

[habeas] judge." (Citations omitted; emphasis added; internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216–17, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

The petitioner's petition for certification refers to the grounds for appeal set forth in the fee waiver application. As was previously set forth in this opinion, the fee waiver application refers to the habeas court's "fail[-ure] to address ten questions of law which [the] petitioner distinctly raised and supported by evidence within [the] petitioner's pretrial brief filed on May 23, 2016. And again raised during and before [the] petitioner's closing argument at his June 6-8 habeas trial."

The fee waiver application is not a model of clarity. The petitioner filed the petition for certification and the fee waiver application in a self-represented capacity. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience. . . . This rule of construction has limits, however. Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A habeas court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Citations omitted; internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569–70, 877 A.2d 761 (2005); see also *Gaynor* v. *Hi–Tech Homes*, 149 Conn. App. 267, 278–79 n.11, 89 A.3d 373 (2014); *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 624–25, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010).

The respondent does not claim that the petitioner failed to preserve any aspect of the present appeal from the court's judgment denying his petition for certification to appeal. Although the fee waiver application does not set forth grounds for appeal that are as clear, exhaustive, or precise as those which may have been set forth by a member of the bar or a person with legal training and expertise, it sufficiently alerted the court to the fact that the petition was based on the court's failure to address several grounds that were raised and argued before the habeas court. Read broadly and real-

istically, this pleading sufficiently conveyed that certification was sought with respect to the claims that the habeas court deemed to have been waived by the petitioner by virtue of his guilty plea. Additionally, we observe that, although it technically was not incorporated by reference as a part of the petition for certification, the petitioner's motion for appointment of appellate counsel, which was filed on the same day that the petitioner filed his motion for reconsideration of the denial of his petition for certification, sufficiently set forth the claims raised in this appeal. Thus, we may presume that, by the time the court considered and denied the motion for reconsideration, it was aware that the petitioner intended to raise the claims presently before us. Accordingly, although the issue of reviewability certainly is debatable, we conclude that the claims before us were preserved for appellate review.

We now turn to our familiar standard of review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. . . .

"In evaluating the merits of the underlying claims on which the petitioner relies in the present appeal, we observe that [when] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 174 Conn. App. 776, 785–86, 166 A.3d 815, cert. denied, 327 Conn. 957, 172 A.3d 204 (2017).

I

First, we address the petitioner's claim that the court abused its discretion in denying certification with respect to whether he had waived several claims that it had determined to be unrelated to his guilty plea. Specifically, the petitioner alleged that, prior to the time of the plea, the trial court improperly refused to permit him to represent himself, refused to permit Drapp to withdraw as counsel, refused to provide him with an investigator, and refused to recuse itself. Additionally, the petitioner alleged that Drapp rendered ineffective assistance by virtue of his failure to pursue a necessity defense and in otherwise preparing his defense. As set forth previously in this opinion, the court determined that the petitioner waived these claims by virtue of his guilty plea of April 29, 2013. We conclude that the court's analysis of the waiver issue was legally sound and that it did not abuse its discretion by denying certification with respect to these issues.

The United States Supreme Court recently discussed some of the consequences of a valid guilty plea, as follows: "[A] valid guilty plea foregoes not only a fair trial, but also other accompanying constitutional guarantees. . . . While those simultaneously relinquished rights include the privilege against compulsory self-incrimination, the jury trial right, and the right to confront accusers . . . they do not include a waiver of the privileges which exist beyond the confines of the trial. . . .

"A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered. . . .

"Finally, a valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a valid plea of guilty." (Citations omitted; internal quotation marks omitted.) *Class* v. *United States*, U.S. , 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018).

Our Supreme Court has discussed the effect of an unconditional guilty plea as follows: "It is well established that an unconditional plea of guilty, made intelligently and voluntarily, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . In general, the only allowable challenges after a plea are those relating either to the voluntary and intelligent nature of the plea or the exercise of the trial court's jurisdiction." (Citation omitted.) *State* v. *Johnson*, 253 Conn. 1, 80, 751 A.2d 298 (2000); see also *State* v. *Han-*

*son*, 117 Conn. App. 436, 456, 979 A.2d 576 (2009), cert. denied, 295 Conn. 907, 989 A.2d 604, cert. denied, 562 U.S. 986, 131 S. Ct. 425, 178 L. Ed. 2d 331 (2010). "A plea, whether conditional or unconditional, does not preclude review of 'jurisdictional defects.' Those defects have been characterized as those which would prevent a trial from occurring in the first place. . . . Thus, after an unqualified plea of guilty or nolo contendere, a defendant may challenge his conviction if the conviction is in violation of the double jeopardy clause . . . if the court lacks subject matter jurisdiction over the case . . . or if the statute under which the defendant is charged is unconstitutional." (Citations omitted.) *State* v. *Madera*, 198 Conn. 92, 98 n.6, 503 A.2d 136 (1985).

"Where . . . a guilty plea is entered on the advice of counsel, the plea constitutes an admission of guilt and a waiver of nonjurisdictional defects and claims, including federal constitutional claims, which might otherwise be raised by way of defense, appeal or collateral attack. . . . This waiver rule means that a claim of the ineffective assistance of counsel due to an alleged conflict of interest, standing alone, is not sufficient to call the validity of a guilty plea and the judgment of conviction based thereon into question. . . . Of course, a guilty plea does not constitute a waiver of a claim that the plea itself was rendered involuntary and unintelligent as a result of a violation of an accused's fundamental constitutional rights. . . . Thus, an allegation of the ineffective assistance of counsel is a factor to be taken into consideration in determining whether a guilty plea was voluntary and intelligent, but for the plea and the judgment of conviction based thereon to be overturned on this ground, it must be demonstrated that there was such an interrelationship between the ineffective assistance of counsel and the plea that it can be said the plea was not voluntary and intelligent because of the ineffective assistance." (Citations omitted.) *Dukes* v. *Warden*, 161 Conn. 337, 343–44, 288 A.2d 58 (1971) aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45 (1972); see also *Tollett* v. *Henderson*, 411 U.S. 258, 266–67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (focus of federal habeas inquiry is on nature of advice of counsel and voluntariness of guilty plea, not existence as such of antecedent constitutional infirmity).

In light of the foregoing authority, the petitioner is unable to demonstrate that he did not implicitly waive the claims at issue by virtue of his unconditional guilty plea.[2] The petitioner suggests that we should interpret *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), such that it prohibits the application of the waiver rule to claims of ineffective assistance of counsel following an unconditional guilty plea. *Hill* defines a petitioner's burden of proof with respect to ineffective assistance claims in the guilty plea context, thereby requiring a petitioner to demonstrate that but

for counsel's errors, he would not have entered the plea. Id., 59. *Hill* is not inconsistent with the application of the waiver rule, nor do we interpret it to have undermined the rule's application in a case such as the present in which the specific claims of ineffectiveness are unrelated to the validity of the unconditional guilty plea.

Likewise, we are not persuaded by the petitioner's argument that his claims related to self-representation and the court's refusal to remove Drapp as his counsel, which he considers "structural errors" requiring automatic reversal, were not subject to the waiver rule. The petitioner urges us to "make clear that a petitioner cannot waive such a claim by pleading guilty" and that such a claim properly may be raised in a habeas proceeding following an unconditional guilty plea. The petitioner, however, acknowledges that there is no relevant authority that directly supports this argument. As stated previously in this opinion, our waiver jurisprudence reflects that an unconditional guilty plea deprives a petitioner of the ability to collaterally challenge his conviction when the claims are based on nonjurisdictional defects that are unrelated to the voluntariness of his plea. We see no reason why this broad class of claims does not encompass the petitioner's claims related to self-representation. The touchstone of the waiver inquiry is whether the claim implicates the validity of the plea. In light of the court's unchallenged factual findings, the petitioner cannot argue, let alone demonstrate, that any of the rulings at issue affected his decision to plead guilty. The court found that despite Drapp's contested representation of the petitioner, the decision to accept the state's plea offer and to plead guilty was made solely by the petitioner.[3]

## II

Next, the petitioner claims that, if trial counsel had rendered effective representation or the court had permitted him to represent himself, he would not have pleaded guilty and would have insisted on exercising his right to a trial. Essentially, the petitioner argues that his guilty plea was not knowing, intelligent, and voluntary because Drapp failed to remove himself as counsel, failed to interview certain witnesses, and failed to prepare and present a necessity defense. We disagree.

As the court observed, the petitioner essentially raised two claims with respect to the representation afforded him surrounding his guilty plea. The first claim was that his plea was not intelligently, knowingly, and voluntarily made because Drapp coerced him to plead guilty. The second claim is that Drapp failed to advise him that he had the ability to appeal from the judgment of conviction that resulted from his guilty plea. The petitioner does not challenge the court's decision as it relates to the court's resolution of these claims. Rather, he argues before us, in a conclusory manner, that defense counsel's ineffectiveness related to pretrial

matters effectively undermined the validity of his plea.

"The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. . . . Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case . . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"It is well established that the failure to adequately advise a client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel. The United States Supreme Court, long before its recent decisions in *Missouri* v. *Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), recognized that the two part test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to ineffective assistance of counsel claims arising out of the plea negotiation stage. . . .

"Finally, we recite the familiar test that governs whether a petitioner's constitutional right to the effective assistance of counsel has been violated. To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [id, 687] . . . . The petitioner has the burden to establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . It is not enough for the petitioner to simply prove the underlying facts that his attorney failed to take a certain action. Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial. . . .

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty

and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 646–48, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

Essentially, the petitioner argues that, absent the alleged flaws in Drapp's pretrial representation (related to his failure to remove himself as counsel, failure to interview certain witnesses, and failure to prepare and present a necessity defense) he would not have pleaded guilty. With respect to proving prejudice, the petitioner argues that he "consistently and unequivocally asserted his right to self-representation so that he could present evidence on a necessity defense to the jury. . . . Prejudice must be presumed related to the right of self-representation. . . . Further, absent the revocation of that right, it cannot be disputed that the petitioner would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.)

Although the petitioner purports to challenge the validity of his plea, his claim on appeal is an attempt to litigate pretrial claims of ineffective representation and rulings with respect to self-representation. "Under [*Dukes* v. *Warden*, supra, 161 Conn. 344], the entry of a guilty plea waives future ineffective assistance of counsel claims unless the ineffective assistance is so intertwined with the guilty plea that the plea cannot be considered knowing, voluntary and intelligent." *Mincewicz* v. *Commissioner of Correction*, 162 Conn. App. 109, 116, 129 A.3d 791 (2015). The petitioner failed to show that any of the alleged deficiencies in Drapp's representation rendered his subsequent guilty plea invalid. If any ineffective assistance occurred, it was antecedent to the plea hearing and known by the petitioner and, as such, was effectively waived by the plea. The court made several findings of fact related to the plea. It is noteworthy that the court unambiguously rejected any claim that the petitioner had been compelled to plead guilty and found that the decision was made by him knowingly and voluntarily. The petitioner has failed to undermine that determination.

For all of the foregoing reasons, we conclude that the petitioner has failed to demonstrate that the court abused its discretion by denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] In light of our determination that the court properly denied certification in its consideration of the merits of the petitioner's claims, we do not reach the merits of his claim that the court improperly denied certification because his petition for certification was untimely.

[2] As is reflected in our discussion of relevant authority, courts generally conclude that, following an unconditional guilty plea, a defendant has "waived" claims that are unrelated to the validity of the plea. "Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) *State* v. *Torres*, 175 Conn. App. 138, 146, 167 A.3d 365, cert. denied, 327 Conn. 958, 172 A.3d 204 (2017), cert. denied,   U.S.    , 138 S. Ct. 1303,   L. Ed. 2d   (2018). In light of the fact that the waiver rule applies by operation of law rather than by any conduct or representation of the defendant beyond his solemn admission of guilt, it may, however, be more precise to refer to the issue as involving implicit waiver or a forfeiture of a defendant's right to raise certain claims as a consequence of a guilty plea. "Implicit waiver arises from an inference that the defendant knowingly and voluntarily relinquished the right in question."(Internal quotation marks omitted.) Id.

[3] Because we conclude that the waiver rule applies to the petitioner's claims, we do not address any of his arguments with respect to procedural default or the cause and prejudice standard.

———————————————