******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# JOE BALTAS *v.* COMMISSIONER OF CORRECTION
## (AC 44259)

Bright, C. J., and Moll and Bear, Js.

*Syllabus*

The petitioner, who previously had been convicted of the crimes of murder and assault in the first degree in connection with his stabbing of three persons, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel had provided ineffective assistance. Following a trial, the habeas court rendered judgment denying the habeas petition, concluding, inter alia, that trial counsel's performance was not deficient and that the petitioner failed to establish prejudice. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to demonstrate that the resolution of his claims involved issues that were debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions raised were adequate to deserve encouragement to proceed further: there was no merit to the petitioner's claim that his right to autonomy was violated when his trial counsel inappropriately conceded his guilt during closing arguments by arguing that the petitioner should not be found guilty because there was evidence that he was not the only potential assailant at the crime scene and the state failed to prove beyond a reasonable doubt that the petitioner, and not the other potential assailant, was responsible for the stabbings, as the record supported the habeas court's conclusion that, in making that argument, trial counsel did not concede the petitioner's guilt, and, therefore, contrary to the petitioner's contention, *McCoy* v. *Louisiana* (138 S. Ct. 1500) was not applicable and the petitioner's right to autonomy was not implicated; moreover, the petitioner's claim of ineffective assistance of counsel, which was premised on the petitioner's assertion that his trial counsel conceded his guilt during closing arguments, was unavailing, this court having concluded that the habeas court properly found that trial counsel did not concede the petitioner's guilt.

Argued November 8, 2021—officially released January 25, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. Following the denial of his petition for certification to appeal, the petitioner, Joe Baltas, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion by denying his petition for certification to appeal because his rights to autonomy and to the effective assistance of counsel were violated. We dismiss the petitioner's appeal.

The following facts, as recited by our Supreme Court in the petitioner's direct appeal, and procedural history are relevant to our resolution of the petitioner's appeal. "The [petitioner] was involved in a relationship with [Misty] Rock, one of the complaining witnesses . . . from December, 2005 until October, 2006. At some point during the month of October, the two discussed leaving Meriden, the town in which both of them lived, to start a new life in South Carolina.

"On October 25, 2006, Rock was living with her brother, Christopher Laverty (Christopher), her mother, Linda Laverty (Linda), and her stepfather, Michael Laverty (Michael). At approximately 10 p.m., Linda and Michael were sitting in the living room of their apartment watching a movie, while Christopher and Rock were on the second floor of the home. Christopher came downstairs and opened the door to the basement, intending to check on the status of a load of laundry. As he opened the basement door, he encountered a masked person who was dressed all in black, wearing a ski mask, and holding at least one knife. The masked person stabbed Christopher in the stomach, and then moved out of the basement and into the living room, where he proceeded to fatally stab Michael. The masked person then turned to Linda, stated 'die, bitch,' and stabbed her in the neck. Linda later testified that she recognized the masked person as the [petitioner] because of his eyes, the sound of his voice, and his body mannerisms. The masked person walked to the staircase leading to the upper floor of the home, and while on the staircase, he ran into Rock, who had heard the commotion from upstairs. In the collision, the masked person's knife went through Rock's sweatshirt and [T]-shirt and inflicted a scratch on her stomach. The masked person then forced Rock in front of him, grabbed her by the hair, and forced her out of the apartment. While this was happening, Christopher grabbed a knife from the kitchen and a telephone and exited the home, running next door to ask a neighbor to call the police. Rock and the masked person then exited the apartment and were walking down the street, away from the apartment. Christopher attempted to stop them, and Rock told him to stop and not come any closer. Christopher then sat down on a bench and called the police himself, identifying the [petitioner] as

the masked person who had just assaulted his family.

"The [petitioner] and Rock then walked to an abandoned car and sat in it. Rock testified that, at this point, the [petitioner] told her that he had killed Michael and stabbed Linda and, although Rock could not remember if the [petitioner] was still wearing a mask, Rock recognized his voice. The [petitioner] and Rock waited in the car until Rock informed the [petitioner] that she needed to use the bathroom. The [petitioner] led Rock to the Pulaski school, at which point the [petitioner]—who at that time was not wearing a ski mask or a dark shirt—and Rock were confronted by police officers. The police observed the [petitioner] holding a butter knife in his hand and told him to drop it. When the [petitioner] did not comply with their command, the police tasered him and he fell to the ground; as he did so, a folding knife later found to be stained with Michael's blood fell out of the [petitioner's] pocket.

"A K-9 officer was also dispatched as a result of Christopher's 911 call, and the officer's dog tracked the path that the [petitioner] and Rock took away from the apartment. The K-9 officer also had his dog perform an 'article recovery . . . .' Between the K-9 officer's search and the actions of other police officers in the area, the following items along the path taken by the [petitioner] and Rock were recovered that evening: (1) a ski mask, the interior of which later tested positive for the [petitioner's] DNA, and the exterior of which tested positive for Michael's blood; (2) a dark, bloody shirt which tested positive for the blood of Linda and Michael; (3) a latex glove stained with the blood of Linda and also possibly of Michael; and (4) a long knife stained with the blood of Michael, which the state medical examiner later concluded was the weapon that caused his fatal wounds. Tests also indicated that Michael and Linda were the sources of various bloodstains found on the [petitioner's] pants, sneaker, and arms when he was arrested. Finally, the police matched a shoe print that was formed in blood at the crime scene to the shoe of the [petitioner]." (Footnotes omitted.) *State* v. *Baltas*, 311 Conn. 786, 790–92, 91 A.3d 384 (2014).

"The [petitioner] . . . was convicted, after a trial by jury, of one count of murder in violation of General Statutes § 53a-54a (a), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), one count of burglary in the first degree in violation of § 53a-101 (a) (2), and one count of kidnapping in the second degree in violation of General Statutes § 52a-94 (a)." (Footnotes omitted.) Id., 789. On appeal, the petitioner's convictions of murder and assault in the first degree were affirmed, his convictions of burglary in the first degree and kidnapping in the second degree were vacated, and the

case was remanded for a new trial on those charges. Id., 828–29. The state declined to reprosecute those charges, and the petitioner's total effective sentence was reduced from 115 years to 75 years of incarceration.

On September 8, 2015, the petitioner filed an amended petition for a writ of habeas corpus, asserting claims of (1) prosecutorial impropriety, (2) police misconduct, and (3) ineffective assistance of trial counsel. In response, the respondent, the Commissioner of Correction, raised special defenses of procedural default and res judicata. After a trial, the habeas court denied the petitioner's habeas petition, finding, inter alia, that his trial counsel's performance was not deficient and that he had failed to establish prejudice.[1] The petitioner subsequently filed a petition for certification to appeal, which also was denied by the court. The petitioner then appealed to this court from the denial of his petition for certification to appeal. On appeal, the petitioner claims that his trial counsel inappropriately conceded his guilt, thereby violating his rights to autonomy and to the effective assistance of counsel.

We now turn to our familiar standard of review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [denial] of his petition for [a writ of] habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification [to appeal] constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. . . .

"In evaluating the merits of the underlying claims on which the petitioner relies . . . we observe that [when] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the

habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 794–95, 189 A.3d 135, cert. denied, 329 Conn. 911, 186 A.3d 707 (2018).

I

The petitioner's first claim is that his right to autonomy was violated when his trial counsel inappropriately conceded his guilt. Specifically, the petitioner argues that the habeas court's conclusion that trial counsel did not concede his guilt was clearly erroneous because it failed to properly analyze the claim under *McCoy* v. *Louisiana*, U.S. , 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018). In response, the respondent argues, inter alia, that the petitioner's autonomy claim fails because his trial counsel did not concede his guilt, and, thus, *McCoy* is inapplicable. We agree with the respondent.

"The [s]ixth [a]mendment guarantees to each criminal defendant the [a]ssistance of [c]ounsel for his defence." (Internal quotation marks omitted.) Id., 1507. "[A] defendant need not surrender control entirely to counsel. For the [s]ixth [a]mendment, in grant[ing] to the accused personally the right to make his defense, speaks of the assistance of counsel, and an assistant, however expert, is still an assistant. . . . Trial management is the lawyer's province . . . . Some decisions, however, are reserved for the client—notably, whether to plead guilty . . . . Autonomy to decide that the objective of the defense is to assert innocence belongs in this [reserved for the client] category. Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against [him or] her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may [the defendant] insist on maintaining [his or] her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 1508. "In *McCoy*, the United States Supreme Court held that defense counsel overrode his client's sixth amendment right to autonomy by admitting the client's guilt without the defendant's consent. Violation of a client's autonomy constitutes structural error and is not subject to harmless error analysis." *John B.* v. *Commissioner of Correction*, 194 Conn. App. 767, 784 n.13, 222 A.3d 984 (2019), cert. denied, 334 Conn. 919, 222 A.3d 513 (2020).

In the present case, during closing argument at the

petitioner's criminal trial, the petitioner's trial counsel argued that the petitioner should be found not guilty because there was evidence that he was not the only potential assailant at the crime scene, and because the state had failed to prove beyond a reasonable doubt that the petitioner, and not the other potential assailant, was responsible for the stabbings. In making this argument, the petitioner's trial counsel did concede that the petitioner was present at the crime scene.[2] The habeas court concluded, however, that, in making this argument, the petitioner's trial counsel did not go so far as to concede the petitioner's guilt.[3] We conclude that the evidence in the record supports the habeas court's conclusion. In fact, unlike in *McCoy* and the other cases on which the petitioner relies, in the present case, rather than concede their client's guilt, counsel argued strenuously that the jury should find the petitioner not guilty. Accordingly, because the habeas court properly found that the petitioner's trial counsel did not concede his guilt, we conclude that *McCoy* is inapplicable and that the petitioner's right to autonomy has not been implicated. Therefore, the petitioner has not demonstrated that the habeas court abused its discretion in denying his petition for certification to appeal with respect to this claim.

## II

The petitioner's second claim is that his right to the effective assistance of counsel was violated when his trial counsel conceded his guilt during closing arguments. Specifically, the petitioner argues that "[t]he habeas court incorrectly concluded that trial counsel merely conceded the petitioner's presence at the scene, which was a reasonable tactical decision under the circumstances of this case." (Internal quotation marks omitted.) Because we have concluded that the habeas court properly found that the petitioner's trial counsel did not concede his guilt; see part I of this opinion; the petitioner's claim of ineffective assistance of counsel, which is premised on that assertion, is unavailing.

We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal, as the petitioner has failed to demonstrate that the issues raised are debatable among jurists of reason, that a court could have resolved the issues in a different manner, or that the issues raised deserve encouragement to proceed further. See *Henderson* v. *Commissioner of Correction*, supra, 181 Conn. App. 794–95.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] With regard to the petitioner's claims of prosecutorial impropriety and police misconduct, the habeas court found that these claims were barred by res judicata and that, even if res judicata did not apply, they were procedurally defaulted. The petitioner does not challenge those rulings on appeal.

[2] The petitioner cites two specific statements in trial counsel's closing argument to the jury: "It's not just [the petitioner] acting alone in this

particular case," and "you can't be firmly convinced that [the petitioner] acted alone . . . ."

[3] Specifically, in addressing the petitioner's claim of ineffective assistance of counsel, the habeas court explained: "[T]he petitioner alleges that defense counsel argued to the jury that there were two participants in the crime without his consent. Said another way, the petitioner alleges that defense counsel conceded his guilt to at least some of the charges without consulting with him or obtaining his permission. The petitioner's claim is not supported by the evidence . . . . [T]here was overwhelming identification, physical and circumstantial evidence placing the petitioner at the scene of the crime as the masked person. . . .

"Reading the entire closing argument in context, defense counsel did not argue that there were two perpetrators as a concession of the petitioner's guilt. Instead . . . they were trying to use the overwhelming evidence of the [petitioner's] presence at the scene and the fact that the state had charged and tried the case under the theory that the petitioner was the sole perpetrator to their best advantage. . . . To the extent defense counsel conceded the petitioner's presence at the scene, that was a reasonable tactical decision under the circumstances and one that defense counsel ha[d] the authority to make. . . . Viewing the entire closing argument in context, defense counsel provided the petitioner with competent and vigorous advocacy, despite substantial and overwhelming evidence. . . . Given the overwhelming evidence, there is also no reasonable probability the petitioner would have received a more favorable outcome had defense counsel contested his presence at the scene during oral argument, or simply not mentioned it. Therefore, the claim fails because the petitioner has not proven prejudice or deficient performance." (Citations omitted; footnotes omitted.)

———————————————